# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| IPNAV, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:25-CV-0084-K |
| | § | |
| CHANBOND, LLC and CBV, Inc. | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant CBV, Inc.'s ("CBV") Motion to Dismiss Plaintiff's Original Petition Pursuant to Fed. R. Civ. P. 12(B)(2) and 12(B)(6) and Alternative Motion to Transfer Venue (the "Motion") and CBV's Brief and Appendix in Support.  Doc. Nos. 11, 12 and 12-1.   Plaintiff IPNAV, LLC ("IPNAV") filed a Response to Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(B)(2) and 12(B)(6) and in the Alternative, Motion to Transfer Venue ("Response") as well as an Appendix in Support.  Doc. Nos. 15 and 15-1.  CBV filed its Reply in Support of its Motion to Dismiss Plaintiffs' Original Petition Pursuant to Fed. R. Civ. P. 12(B)(2) and 12(B)(6) and Alternative Motion to Transfer Venue.  Doc. No. 16.   Defendant Chanbond, LLC ("Chanbond") has not appeared, and the Motion is ripe to decide

After careful consideration of the Motion, the Parties' briefs, the relevant law, and the record before the Court, the Court finds that the Court does not have personal jurisdiction over CBV, and pursuant to 28 U.S.C. § 1631, it is in the interest of justice

to transfer this action to the U.S. District Court for the District of Delaware rather than dismiss the case. Accordingly, the Court directs the Clerk to TRANSFER this action to U.S. District Court for the District of Delaware. Pursuant to Local Civil Rule 62.2, unless all Parties jointly move for an expedited transfer, the Court's order transferring this case to the District of Delaware shall be STAYED for 21 days upon the entry of this order, after which time the Clerk shall transfer this action to the U.S. District Court for the District of Delaware with no further action of this Court.

## I.    BACKGROUND

Before the Court is a suit by IPNAV that, in substance, seeks the Court to order CBV to reimburse the litigation expenses IPNAV incurred in its intervention in CBV's suit against Chanbond, which CBV brought to attempt to enjoin Chanbond from paying IPNAV's contracted fee. This action is merely the latest episode in long-running series of conflicts which has entangled several previous courts; given the Parties' extensive litigation, and the Court will focus this summary on the background and procedural facts relevant to the narrow issues presently before the Court.

In the present action, IPNAV now seeks to recover its litigation expenses in the aforementioned suit from Chanbond and CBV on the basis that: (i) Chanbond agreed to indemnify IPNAV for any costs "relating to or arising from" the underlying services agreement; (ii) in settling the it suit, CBV granted Chanbond a hold harmless; and (iii) IPNAV asserts that this hold harmless expressly covers expenses owed by Chanbond pursuant to its agreement with IPNAV, so though not in privity with CBV, it is a

beneficiary to the Chanbond CBV agreement, and thus has standing to sue and recover from both Chanbond and CBV.

In 2015 CBV sold several communications patents to Chanbond via a "Patent Purchase Agreement" in exchange for a 50% net participation in the patents' intended future monetization by Chanbond.  Doc. No. 1-3 at 3, ¶1; *see also*  Doc. No. 15-1 at 3, ¶3.3.2.  At that time, Chanbond also entered an "Advisory Services Agreement" with IPNAV to pursue a monetization effort on Chanbond's behalf, in exchange for a 22% monetization fee payable to IPNAV.  Doc. No. 1-3 at 3, ¶2; *see also* Doc. No. 15-2 at 2, ¶5.  The Advisory Services Agreement between IPNAV and Chanbond contained an indemnification provision whereby Chanbond agreed to indemnify IPNAV for "any and all… expenses, costs, of any nature or type whatsoever… relating to or arising from the agreement." Doc. No. 1-3 at 3-4, ¶2; *see also* Doc. No. 15-2 at 4, ¶15.

Ultimately these patent monetization efforts led to Chanbond's realizing a $125 million settlement with a third-party in 2021.  *See CBV, Inc. v. Chanbond, LLC*, Civil Action No. 1:21-cv-01456, 2024 WL 1092015 at *2 (D. Del. Mar. 13, 2024)(Williams, J.)(see background for further detail).  However, Chanbond then disputed its obligation to pay IPNAV its fees, and IPNAV initiated arbitration against Chanbond to secure its fee.  *Id.*  Before arbitration was completed, CBV filed suit against Chanbond in U.S. District Court in Delaware seeking to enjoin Chanbond from paying IPNAV's fees, pursuant to terms in its own Patent Purchase Agreement with Chanbond.  *Id*.; *see also* Doc. No. 1-3 at 4, ¶3.  IPNAV then intervened.  *Id*.; *see also*

*CBV, Inc.,* 2024 WL 1092015 at *2.  In 2022 Chanbond and IPNAV's arbitration panel granted an award to IPNAV of $27.5 million plus fees and expenses.  *Id.*  The Delaware Court then denied CBV's motion for a preliminary injunction to enjoin Chanbond from paying IPNAV.  *Id.*  After CBV's injunction was denied, in November of 2022, Chanbond and IPNAV entered an agreement to resolve their dispute with payment of $30 million to IPNAV and other agreed promises (the "2022 Settlement Agreement").  Doc. No. 1-3 at 4, ¶3; Doc. No. 15-3 at 1-3, ¶1.

CBV then separately settled its claims against Chanbond in April of 2023 with an agreement (the "2023 Settlement Agreement") in which, in addition to exchanging other mutual promises, Chanbond agreed to:

(i)   pay $4 million to CBV; and

(ii)  "provide reasonable cooperation in CBV's pursuit of claims against" IPNAV;

while CBV agreed to:

(i)   dismiss all breach of contract claims against Chanbond except certain declaratory claims "necessary to recover against" IPNAV;

(ii)  "not seek monetary or other relief against Chanbond";

(iii) "hold [Chanbond] harmless in connection with any counts that remain"; and

(iv)  pay Chanbond 25% of any future net recoveries from IPNAV, up to $500,000.

Doc. No. 1-3 at 4, ¶4;  Doc. No. 15-4 at 1-3, ¶¶2.1-4.2.  After entering the Settlement Agreement with Chanbond, CBV continued to press its Delaware suit to recover the payment to IPNAV, but the Delaware Court granted summary judgment for IPNAV

4

on CBV's remaining claims in March of 2024. *CBV, Inc.*, 2024 WL 1092015 at \*5. CBV filed an appeal in the Third Circuit, which remains pending. *See CBV Inc. v. ChanBond LLC, et. al., appeal briefed*, No. 24-1780 (3rd Cir. April 26, 2024).

In September of 2024, IPNAV then filed this action in 116th District Court in Dallas to recover from Chanbond and CBV litigation costs it incurred in successfully intervening in CBV's Delaware suit. Doc. No. 1-3 at 2-6. IPNAV asserts Chanbond owes it reimbursement for its legal expenses which it incurred after IPNAV and Chanbond's 2022 Settlement Agreement to due to the indemnification provisions within IPNAV and Chanbond's 2015 Services Agreement. Doc. No. 15-2 at 4, ¶15. These expenses, IPNAV asserts, are then owed by CBV to Chanbond (and then, ultimately, to IPNAV), since CBV agreed it would hold Chanbond harmless "in connection with any counts that remain" in CBV and Chanbond's 2023 Settlement Agreement. Doc. No. 15-4 at 3, ¶4.2. Though IPNAV acknowledges it is not a party to CBV's Settlement Agreement, IPNAV argues it is a third-party beneficiary of that agreement, and thus has standing to sue CBV directly to enforce and recover its fees under CBV's hold harmless agreement with Chanbond. Doc. No. 15 at 16-19, ¶¶3.1-3.2.

CBV removed to this Court on the basis of diversity. Doc. No. 1. CBV then brought the present Motion which seeks: (i) dismissal on the basis of a lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2); (ii) dismissal for a failure to state a claim due to lack of standing pursuant to Fed. R. Civ. P. 12(b)(6); or, in the alternative,

(iii) transfer on the basis of a mandatory forum selection clause in the Settlement Agreement sought to be enforced in this suit, pursuant to 28 U.S.C. 1404(a).  Doc. No. 11; *see also* Doc. No. 12 at 6-8.

## II.    STANDARD OF REVIEW

Since courts have "considerable leeway to choose among threshold grounds for denying audience to a case on the merits" the Court will first address CBV's Motion to Dismiss for lack of personal jurisdiction, before considering, if necessary, CBV's other pending motions.  *See Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 100 (5th Cir. 2018) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 588 (1999)).

The federal rules permit a defendant to move to dismiss an action for a lack of personal jurisdiction over a defendant.  FED. R. CIV. P. 12(b)(2).  The party invoking the court's jurisdiction bears the burden of establishing that a defendant has the requisite minimum contacts with the forum state to justify the court's jurisdiction. *Herman v. Cataphora, Inc.*, 730 F.3d 460, 464 (5th Cir. 2013).

However, if the court rules on jurisdiction without holding an evidentiary hearing, "the party seeking to assert jurisdiction is required only to present sufficient facts to make out a prima facie case supporting jurisdiction." *Central Freight Lines Inc v. APA Transport Corp.,* 322 F.3d 376, 380 (5th Cir. 2003).    Thus, if no hearing is held, establishing jurisdictional proof by a preponderance of the evidence is not required. *Johnston v. Multidata Sys. Intern. Corp.,* 523 F.3d 602, 609 (5th Cir. 2008).

A party may establish a prima facie case through "affidavits, interrogatories, depositions, oral testimony or any combination of the recognized methods of discovery." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). In determining whether a prima facie case has been made, a "court shall accept as true that party's uncontroverted allegations (so long as the allegations are not merely conclusory) and resolve all factual conflicts in favor of the party seeking to invoke the court's jurisdiction." *Central Freight*, 322 F.3d at 380.

### III.    ANALYSIS

### A. CBV's 12(b)(2) Motion asserts the Court lacks personal jurisdiction

CBV's pending Rule 12(b)(2) Motion asserts that IPNAV has failed to make a prima facie showing that the Court has personal jurisdiction over CBV, and since IPNAV has failed to establish Court has personal jurisdiction over CBV, the claims against CBV must be dismissed. Doc. No. 12, at 12; Doc. No. 15 at 2.

For a district court in Texas to exercise diversity jurisdiction over a nonresident defendant, the court must comply "with both federal due-process requirements and the long-arm statute of Texas." *Trois v. Apple Tree Auction Ctr., Inc.,* 882 F.3d 485, 488 (5th Cir. 2018). Since Texas's long-arm statute authorizes exercise of personal jurisdiction to the fullest extent allowed under the Constitution, "the two-step inquiry collapses into one federal due process analysis." *Sangha*, 882 F.3d at 101. To meet federal due process requirements, the defendant must have certain "minimum contacts" with the

forum state, and the exercise of jurisdiction in the forum state must not "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945).   A court's jurisdiction over a defendant is based on that defendant's contacts with the forum, and these contacts may either establish general or specific personal jurisdiction.  *Ford Motor Co. v. Montana Eighth Judicial Dist. Court,* 592 U.S. 351, 358 (2021).

### 1.  The Court does not have general personal jurisdiction over CBV

General jurisdiction allows a court to adjudicate "any and all" claims against a defendant in a forum in which the defendant is "at home."   *Daimler AG v. Bauman*, 571 U.S. 117, 137-38 (2014).  A defendant is at home and subject to general personal jurisdiction in their domicile if a natural person, or, if be a corporation, where it is incorporated, has its principal place of business, or where due to its "continuous and systematic" affiliations with the forum, it is "essentially at home."  *Id*.

After careful review of the Parties' Briefs, the relevant law, and the record before the Court, the Court finds that IPNAV has not made a prima facie showing the Court has general personal jurisdiction over CBV.  In support of its Motion to Dismiss for a lack of personal jurisdiction, CBV attached an officer's affidavit, which swears:

(i)      CBV is incorporated in Delaware;

(ii)     CBV has its principal place of business in Pennsylvania;

(iii)     CBV has no real property (owned or leased), bank accounts, mailing addresses, telephone listings, employees, officers, or directors in Texas;

(iv)     CBV does not derive any earnings in or from Texas; and

(v)     CBV does not pay taxes to the State of Texas.

Doc. No. 12-1 at 28-29, ¶¶1-12.

Since IPNAV does not offer any evidence to controvert the above, nor offer any other factual basis by which the Court might find CBV has "systemic and continuous contacts" that make it "essentially at home" in Texas in spite of its state of incorporation and principal place of business being elsewhere, the Court concludes that IPNAV concedes that the Court does not have general personal jurisdiction over CBV. Doc. No. 15 at 9, ¶2.   Thus, given the uncontroverted evidence which shows CBV is incorporated in Delaware, has a principal place of business in Pennsylvania, and lacks the systemic and continuous contacts which could make it essentially at home in Texas, the Court does not have general personal jurisdiction over CBV.

## 2. The Court does not have specific personal jurisdiction over CBV

CBV further asserts that the allegations by IPNAV fail to make a prima facie showing that the Court has specific personal jurisdiction over the specific claims IPNAV has brought in this action against CBV.  Doc. 15 at 2-4.  Specific jurisdiction is case-specific and is based on the "relationship among the defendant, the forum, and the litigation." *Daimler AG*, 571 U.S. at 34.  Specific jurisdiction may only be established when the defendant "purposeful[ly] avails" itself "of the privilege of

conducting activities within the forum state." *Ford Motor Co.,* 592 U.S. at 359 (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985)). A defendant may subject itself to jurisdiction in the forum state when it "deliberately reach[es] out beyond its home, by, for example, exploiting a market in the forum state or entering a contractual relationship centered there." *Ford Motor Co.,* 592 U.S. at 359 (citing *Walden v. Fiore,* 571 U.S. 277, 285-86 (2014)). Notably, although entry into a contract which "envision[s] continuing and wide-reaching contacts in the forum state" may demonstrate ties to the forum, it is not the contract, but "the defendant's conduct which must form the necessary connection with the forum state that is the basis of its jurisdiction." *Walden,* 571 U.S. at 285-86. Further, since the "minimum contacts analysis looks to the defendant's contacts with the forum state itself, not the defendant's contacts with persons who reside there," a "defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id.*

Finally, for a court to have specific personal jurisdiction, "the plaintiff's claims must arise out of, or relate to, the defendant's contacts with the forum." *Ford Motor Co.,* 592 U.S. at 359 (quoting *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cnty.,* 582 U.S. 255, 262 (2017)). Specific, or case-linked jurisdiction "is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 919 (2011)(quotation omitted).

With regards to its challenge to IPNAV's assertion of specific, or claim-linked jurisdiction, CBV asserts that IPNAV has failed to establish that it purposefully availed itself of the forum state of Texas, and further, fails to establish a prima facie case that IPNAV's specific claims brought in this action, arose from, or are related to, CBV's contacts with Texas. Doc. No. 15 at 2-4.

### a. IPNAV has failed to establish a prima facie case that CBV purposefully availed itself of the forum state's benefits and protections

#### 1. IPNAV assertion that the Court has specific personal jurisdiction over CBV mistakenly conflates Chanbond's alleged forum ties with CBV's

IPNAV asserts the Court has specific personal jurisdiction over CBV, based on conflating the alleged forum ties of Chanbond and CBV. IPNAV asserts that this Court has specific jurisdiction over CBV on the basis that *Chanbond's* principal place of business is in Texas, and CBV sold its patents to *Chanbond* to monetize its patents, which *Chanbond* then did from Texas. Doc. No. 15 at 11. Specifically, IPNAV asserts "CBV and Chanbond/IPNAV had an ongoing business relationship" and the "contract between CBV and Chanbond… was to be performed (*on Chanbond's part, at least*) within Texas, by Texas residents, acting in Texas." *Id.* at 12-13 (emphasis added). Thus, IPNAV asserts that "CBV thus was or should have been fully cognizant that litigation over the relationship, to the extent it was between CBV and IPNAV (between whom there is no forum selection clause) would likely occur in Texas." *Id.* at 13.

These arguments are unavailing since they fundamentally misconstrue personal jurisdiction. Although Chanbond's alleged Texas ties could establish Chanbond's personal jurisdiction, personal jurisdiction is personal *to each defendant*. Thus, IPNAV's assertion that Chanbond performed the contract in Texas does not establish "significant activities by" or "continuing obligations of" CBV required for the Court to establish a prima facie case for specific personal jurisdiction over CBV. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-79 (1985). Further, these assertions, based on Chanbond's alleged forum ties, also fail to assert the specific claims presented here specifically "arise out of or relate to" CBV's contacts with the forum as IPNAV must to establish a prima facie case of specific personal jurisdiction for CBV. See *Bristol-Myers Squibb Co.*, 582 U.S. at 262. For these reasons, IPNAV's allegations of Chanbond's forum ties are insufficient to establish its required prima facie showing that the Court has specific personal jurisdiction over CBV.

        **2. Further, IPNAV fails to make its required prima facie showing in support of specific personal jurisdiction since after being challenged, it fails to support its jurisdictional assertions with evidence.**

In addition to IPNAV's misplaced reliance on Chanbond's asserted forum ties as the basis for the Court's specific personal jurisdiction over CBV, IPNAV fails to properly support its allegations of Chanbond's forum ties with the evidence necessary to make a prima facie showing of jurisdiction. When personal jurisdiction is challenged, the party seeking jurisdiction must support its allegations with evidence to

establish a prima facie case.  *Stuart*, 772 F.2d at 1192. Here, although IPNAV asserts Chanbond had its principal place of business in Texas (see *supra*) at the time it entered the Patent Purchase Agreement with CBV in 2015, CBV's  Notice of Removal asserts that, as of the time of removal in January of 2025, Chanbond was a Delaware LLC, whose sole member was a Delaware corporation, whose principal place of business was in Virginia.  Doc. No. 1 at 3, ¶13.  Since Chanbond has not appeared, the Court need not presently reconcile these diverging assertions of these critical jurisdictional facts. However, since IPNAV asserts the Court has personal jurisdiction over CBV based on these same facts, since they have been challenged by CBV, IPNAV must offer evidence to establish all elements of its prima facie case.  *Central Freight Lines Inc,* 322 F.3d at 380.  This IPNAV failed to do, since in the face of CBV's challenge, IPNAV did not introduce evidence to support its conclusory assertion of Chanbond's forum ties.

Assuming arguendo that the Court could find it had jurisdiction over CBV based on Chanbond's alleged forum ties, IPNAV's failure to address CBV's challenge to Chanbond's forum ties and properly support Chanbond's forum ties with evidence, fatally undermine IPNAV's prima facie case.  Thus, even if the Court were to find it could infer from Chanbond's ties, specific personal jurisdiction over CBV, IPNAV fails to produce evidence necessary to make a prima facie showing of Chanbond's alleged, but challenged, ties.  Thus, even were the Court to accept IPNAV's jurisdictional theory, IPNAV fails to provide evidence to make the prima facie showing of jurisdiction over CBV necessary to overcome CBV's Rule 12(b)(2) challenge.

### 3. Finally, the contracts which IPNAV seeks to enforce do not evidence specific personal jurisdiction in Texas

Finally, after careful review of the contracts which IPNAV asserted are the basis for the Court's jurisdiction in this action, the Court finds that these contracts do not actually provide evidence that will help IPNAV make its required prima facie showing that this forum has specific personal jurisdiction over CBV. As noted above, IPNAV brought this suit to enforce a Chanbond and CBV's contract, and IPNAV asserts this contract is sufficient to establish the Court's personal jurisdiction over CBV. Of course, while a contract with a forum state resident is insufficient to establish personal jurisdiction over a non-resident by itself, the specific terms it contains and the course of dealing it establishes may some evidence of a contracted parties' forum conduct and resulting forum ties. *See Burger King Corp.,* 471 U.S. at 481-82.

Given this, the Court reviewed CBV's contracts and related course of dealing, which IPNAV cited to establish the Court's specific personal jurisdiction, and finds the contracts IPNAV cite do not show CBV purposefully availed itself of the benefits and protections of this forum. Specifically, in the 2015 Patent Purchase Agreement, CBV and Chanbond expressly contracted to exclusively bring their disputes to courts in Delaware and to apply Delaware law. Doc. No. 15-1 at 9, ¶8.5. Then in 2021, CBV brought its suit against Chanbond in Delaware, in compliance with the forum selection in that agreement. *See CBV, Inc.*, 2024 WL 1092015 at *1. In 2023, CBV and Chanbond then settled their suit, with and the Settlement Agreement also required

their disputes to be brought the U.S. District Court for the District of Delaware and adjudicated under Delaware law. Doc. No. 15-4 at 4, ¶6.  IPNAV then brought this suit in 2024 to enforce the 2023 Settlement Agreement, though IPNAV sued in a Texas, instead of Delaware, as the Settlement Agreement required.  Doc. No. 1-3 at 2.

As such, CBV and Chanbond's (i) 2015 Patent Purchase Agreement, (ii) 2021 litigation in Delaware, and (iii) 2023 Settlement Agreement, each demonstrate CBV and Chanbond have sought the benefits and protection of Delaware, rather than Texas; it is only IPNAV's suit which appears to presently tie the parties to Texas.  Doc. No. 8-1 at 4, ¶5.  Given the record before it, IPNAV's decision to file suit against CBV in Texas is puzzling, but IPNAV's filing suit in Texas, is a "unilateral activity of another party" which cannot, by itself, create personal jurisdiction over CBV.  *Burger King Corp.,* 471 U.S., at 475 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 417 (1984)).  Thus, considering the "deliberate affiliation" with Delaware evident from the CBV's agreed forum and choice of law provisions in favor of Delaware in the very agreement which IPNAV seeks to enforce, the contracts cited by IPNAV simply do not evidence forum ties necessary to establish the Court's personal jurisdiction over CBV. *See Burger King Corp.,* 471 U.S. at 481-82.

Thus, IPNAV fails to make a prima facie case required for the Court to exercise specific personal jurisdiction over CBV.  Accordingly, since IPNAV has failed to make its required prima facie showing that the Court has either general, or specific, personal jurisdiction over CBV, the Court finds it does not have personal jurisdiction over CBV.

### B. It is in the interest of justice to transfer rather than dismiss the case

If a district court concludes it lacks personal jurisdiction, it may either dismiss the case, or, if it is in the interest of justice, transfer the action to another court in which it could have been brought. *See Franco v. Mabe Trucking Co., Inc.*, 3 F.4th 788, 792-97 (5th Cir. 2021) (citing 28 U.S.C. § 1631 and 28 U.S.C. § 1406(a)).

In considering whether to dismiss or transfer a case for want of jurisdiction, courts may consider discretionary factors including: the time, investment and progress realized in the litigation; the parties' citizenship and where they are at home; the parties' consent or non-opposition to transfer; whether the same claims are already pending elsewhere; the potential for limitations to bar a refiled case. *See, e.g. Aguacate Consol. Mines, Inc. of Costa Rica v. Deeprock, Inc.*, 566 F.2d 523, 524-25 (5th Cir. 1978); *see also Garcia Hamilton & Associates, L.P. v. RBC Capital Markets, LLC*, 466 F. Supp. 3d 692, 704 (S.D. Tex. 2020); *Hilltop Sec. Inc. v. Clear Haven Capital Mgmt., LLC*, Civ. Action No. 3:23-CV-0432-B, 2023 WL 6613069 at *5 (N.D. Tex. Oct. 10, 2023)(Boyle, J.). In addition, courts will generally transfer rather than dismiss a case when jurisdiction is lacking to protect the parties against being "penalized by time-consuming and justice-defeating technicalities." *Franco*, 3 F.4th at 793 (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466-67 (1962)); *see also Haas Outdoors, Inc. v. Dryshod Int'l, LLC*, 347 F. Supp. 3d 266, 272 (N.D. Miss. 2018)("Normally transfer will be in

16

the interest of justice because normally dismissal… is 'time-consuming and justice-defeating.'")(citation omitted).

After careful consideration of the record before the Court, the Court finds that though the Court lacks jurisdiction to hear the case, the interest of justice will be better served by this action's transfer, rather than its dismissal. Although the Court might properly grant the Rule 12(b)(2) Motion and dismiss IPNAV's claims against CBV, the Court finds a transfer to cure jurisdiction will better serve the interests of justice, since transfer will protect against inequity of limitations resulting from a justice-defeating technicality. Further, the Court finds the time and expense already spent litigating the underlying dispute weighs in favor of a transfer, rather than the further inefficiency of a time-consuming dismissal.

In considering where to transfer the case, the Court finds the District of Delaware is appropriate forum. On the record before the Court, it is evident CBV and Chanbond are both subject to general personal jurisdiction in Delaware. Further, CBV and Chanbond agreed in their 2023 Settlement Agreement, to bring disputes such as this present action, before the U.S. District Court in Delaware. Further, CBV has expressly moved, as an alternative to dismissal, for the case to be transferred to Delaware. Finally, there may be judicial efficiency gains from transfer to Delaware, where the complex underlying related case is still on appeal. *CBV, Inc.*, 2024 WL 1092015; *see also CBV Inc.*, No. 24-1780 (3rd Cir.). As this action is inherently a

derivative of the prior action now on appeal, final resolution of that action could impact determinations in this case, and is further reason transfer to Delaware is proper.

Finally, since Chanbond has not challenged the Court's personal jurisdiction, the Court considered severing the Defendants and transferring IPNAV's case against CBV to the District of Delaware while retaining the action against Chanbond.  The Court concluded that severing IPNAV's inter-linked claims against Chanbond and CBV into separate actions would be duplicative, increase complexity, and could be prejudicial.  Further, since Chanbond has not appeared and this action is properly adjudicated in Delaware, there can be no prejudice to Chanbond from a transfer.  Accordingly, the Court finds it is in the interest of justice to transfer the *entire* action, to the U.S. District Court for the District of Delaware.

## IV.    CONCLUSION

After careful consideration of the Motion, the Parties' briefs, the relevant law, and the record before the Court, the Court  finds that the Court does not have personal jurisdiction over CBV, and pursuant to 28 U.S.C. § 1631, it is in the interest of justice to transfer this action to the U.S. District Court for the District of Delaware rather than dismiss the case.  Accordingly, the Court directs the Clerk to TRANSFER this action to U.S. District Court for the District of Delaware.  Pursuant to Local Civil Rule 62.2, unless all Parties jointly move for an expedited transfer, the Court's order transferring this case to the District of Delaware shall be STAYED for 21 days upon

the entry of this order, after which time the Clerk shall transfer this action to the U.S.

District Court for the District of Delaware with no further action of this Court.

**SO ORDERED.**

Signed June 25th, 2025.

_Ed Kinkeade_

ED KINKEADE
UNITED STATES DISTRICT JUDGE